MARGARET O'ROURKE HUNT, PLAINTIFF, v. HARRY A. GORENBERG AND FANNIE GORENBERG, HIS WIFE, DEFENDANTS.

Decided October 15, 1930.

NOTE.—The equity feature of this case is reported in 107 N. J. Eq. 582. At the suggestion of Judge Ackerson the law feature of this case is now published.

For the plaintiff, *Charles C. Colgan.*

For the defendants, *O'Brien & Tartalsky.*

ACKERSON, S. C. C. The complaint herein alleges that the defendants executed and delivered to the plaintiff a bond

and mortgage covering property which was subsequently sold by the defendants to John and Fannie Trupkiewicz, subject to said mortgage, and that said property was thereafter sold under foreclosure of said mortgage resulting in a deficiency, to recover which this suit is brought against the defendants, as the obligors on the bond accompanying said mortgage.

The defendants' answer admits the execution and delivery of the bond and mortgage and the foreclosure of the mortgage and that a sheriff's sale was held at which the premises were struck off to the plaintiff for $500. The answer further sets up three separate and distinct defenses. The first separate defense alleges in substance that after the execution and delivery of the bond and mortgage in question, the defendants conveyed the premises covered thereby to said John and Fannie Trupkiewicz, and that thereafter plaintiff, as mortgagee, entered into a separate written agreement unto said John and Fannie Trupkiewicz, defendants grantees, upon a sufficient consideration, to extend the time for the payment of the balance of the sum secured by said bond and mortgage for three more years; that defendants were not parties to said extension agreement, and that the effect of such extension agreement, a copy of which is attached to the answer, is to discharge the defendants, as obligors, from liability on said bond for any deficiency resulting from said foreclosure. The second separate defense merely alleges that at the time of the original maturity of said bond the value of the land covered by said mortgage was more than sufficient to fully pay the mortgage debt, but that thereafter, and during the extended time for payment, the value of said land depreciated to the extent of at least $4,500, whereby defendants were released and dischargd from further liability on said bond. The third separate defense alleges that the amount of the deficiency is undetermined because plaintiff, who purchased the premises at the foreclosure sale, has failed and neglected to comply with the terms of the sheriff's sale to him and neglected to pay the consideration money and receive the deed from the sheriff of Hudson county.

In this situation the plaintiff now moves to strike out the aforesaid answer as sham, frivolous and not setting up any defense in a court of law, and upon the further ground that the matters involved are *res adjudicata.*

The plaintiff has submitted an affidavit and copies of documents fully substantiating all of the facts set forth in their complaint, but the defendants have not submitted any affidavits or other competent proof to dispute such facts, nor to substantiate any of the matters set forth in their answer, including the aforesaid separate defenses, as required by rule 80 of the Supreme Court (Revision of 1926) which provides: "The answer may be struck out and judgment final may be entered upon motion and affidavits as hereinafter provided, unless the defendant, by affidavit or other proofs, shall show such facts as may be admitted, by the judge hearing the motion, sufficient to entitle him to defend."

As the defendants have failed to submit to me upon the motion affidavits or other proofs as to the facts set forth in their answer, including the separate defenses, and as the plaintiff's affidavit fully sets out the facts upon which his cause of action is based and fully complies with rule 81 of the Supreme Court, I must assume that the facts set forth in the plaintiff's affidavit are true, and that the defendants cannot show such facts as would be sufficient to entitle them to defend. *Schiff* v. *Alexander,* 130 *Atl. Rep.* 133; *Larner* v. *Town of Montclair,* 99 *N. J. L.* 510. The foregoing observations are sufficient to dispose of this motion adversely to the defendants

It may be well, however, to deal further with the subject argued. The defendants' position at the argument of this motion was rested upon the legal effect upon the defendants of the above-mentioned agreement extending, without their consent, the time in which their grantees might pay the principal of the aforesaid bond and mortgage. We will proceed to consider this phase of the case, assuming that such agreement was actually executed by the plaintiff. The question thus presented is specifically raised by the first and second defenses in the

defendants' answer, and its solution, as a question of law, will also effectively dispose of such defenses, the third defense raising purely a question of fact, having already been shown to be sham because not substantiated by proofs.

The so-called extension agreement, a copy of which is annexed to defendants' answer, is based upon an expressed consideration of one dollar and the covenants therein contained, and does not purport to change any of the terms or conditions of said bond and mortgage, but merely extends for three years the time in which defendants' grantees, John and Fannie Trupkiewicz, may have in which to pay the balance of the principal thereof.

Reflection will show that in order to maintain this defense of release or discharge from liability on the bond by extension of the time of payment given to defendants' grantees, the defendants must base their contention upon one or the other of two propositions. They must maintain either, that having contracted with their creditor as principals, they may now show that as between themselves and their grantees, John and Fannie Trupkiewicz, they are in fact sureties, and obtain the privileges of the latter character in this action at law by their creditor on the original obligation, or else that the so-called extension agreement between plaintiff and defendants' grantees, amounted to a novation, whereby this latter agreement was substituted for the original obligation, or the said Trupkiewicz substituted in place of the defendants as the sale debtors.

It is undoubtedly true that an extension of time for payment given to a principal upon a sufficient consideration will discharge a surety who is not a party to such extension agreement. *Grover* v. *Hoppock,* 26 *N. J. L.* 191; *Nightingale* v. *Meginnis,* 34 *Id.* 461.

It is also well settled in this state that where a grantee covenants with his grantor to pay off a mortgage encumbrance, if the grantor is personally liable thereon, the grantee is regarded in courts of equity as the principal debtor, and the grantor only as a surety. *Stiger* v. *Mahone,* 24 *N. J. Eq.*

426, 430; *Crowell* v. *Hospital of St. Barnabas,* 27 *Id.* 387. But it is equally well settled in this state that courts of law under such circumstances do not recognize this change of status, but hold that the grantor, who contracted the mortgage debt, after the assumption thereof by the grantee, continues at law to be the principal debtor. In other words, one who has contracted as a principal, but who is in fact, or later becomes a surety, cannot in a court of law claim any of the privileges belonging to the latter character. *Palmer* v. *White,* 65 *N. J. L.* 69; *Pintard* v. *Davis* (*Court of Errors and Appeals*), 21 *Id.* 632; *Anthony* v. *Fritts,* 45 *Id.* 1; *Shute* v. *Taylor* (*Court of Errors and Appeals*), 61 *Id.* 256; *Grier* v. *Flitcraft,* 57 *N. J. Eq.* 556; *Crowell* v. *Hospital of St. Barnabas, supra.*

It is indeed singular that the defendants as well as the plaintiff herein rely in part upon the case of *Palmer* v. *White, supra,* to support their respective contentions. The case is undoubtedly directly in point upon this phase of plaintiff's motion, but it is difficult to see how the defendants can draw any consolation from it. The defendant, White, had executed a bond and mortgage to one Brown to secure a loan, and later conveyed the premises to Elizabeth Moffatt, who expressly assumed the payment of said bond and mortgage, which by various assignments came to the ownership of the plaintiff Palmer, who later brought suit in a court of law to recover the amount due thereon. The defendant pleaded extension of time of payment by agreement with the person who assumed the payment of the bond and mortgage, and without the consent of the defendant. The plaintiff demurred to the plea of extension of time of payment, and the court said *inter alia:*

"It is well settled that there must be a sufficient consideration to support the contract for extension of time in order to give it legal effect as a release to the surety. * * * The plea fails to aver that any consideration was given for such extension of time. The demurrer admits only such facts as are well pleaded, and assuming, as the plea does, that White"

(the defendant obligor) "was surety only upon said bond after the assumption by Elizabeth Moffatt, still the plea is bad for failure to set out a consideration for the extension of time."

The defendants in the case *sub judice* argue from the above extract that the court held that the plea would have been good in the court of law if a consideration for the extension agreement had been expressed. That the court did not so hold is apparent from the fact that the court merely assumed that the defendant was a surety upon the bond because the plea so assumed, but it did not hold that the defendant's status was in fact that of a surety at law. This is made clear from the next succeeding paragraph of the opinion, which reads as follows:

"But at law, White" (the obligor) "after the assumption by Elizabeth Moffatt, continued in law to be the principal debtor, and, therefore, also the plea is vicious and the demurrer to it is well taken."

It is apparent, therefore, that the plea was fundamentally bad because the defendant obligor continued at law to be the principal debtor and not a surety as assumed by the plea, notwithstanding the assumption of the payment of the debt by the defendant's grantee.

It will be seen, therefore, from what has already been said that this phase of the plaintiff's motion involves the defendants' remedy and not their right to ultimately prevail in the proper tribunal. In the case of *Pintard* v. *Davis, supra,* the court said:

"If bound, as principal, a defendant cannot aver at law in an action upon the instrument, that he is only a surety, though in equity parol evidence is admissible to show who is principal and who surety."

Mr. Justice Dixon, in dealing with the same principal in *Shute* v. *Taylor, supra,* had this to say:

"Inasmuch as the matter concerns, not rights but only remedies, we think it should be considered settled that in an action on the contract the creditor will not be held at

law bound to treat as sureties those who contracted as principals, merely because they were in fact, or became sureties, to his knowledge."

Probably New Jersey's position upon the underlying principle here involved is best expressed by Chief Justice Beasley in the case of *Anthony* v. *Fritts, supra,* where he said, *inter alia:*

"If the defendant had bound himself in this instance as a surety, the extension of time for the payment of the note given on a legal consideration to the principal debtor, would either at law or in equity, have worked his exoneration from all liability, but having stipulated unconditionally for the payment of this money, he cannot interpolate into his engagement any terms tending to his protection, as it does not seem practicable for him to do more than to assert that the conduct of the plaintiff in disregarding his status of surety of which he was informed, was inequitable. * * * This contract being, as respects the defendant, of primary obligation, cannot be converted into one of secondary obligation; but, nevertheless, in the view of the court of equity, it was not conscionable for the plaintiff to increase the hardship of the defendant's position as, in point of fact, he was the surety of the principal debtor. But this right of the surety to have his status respected does not pertain to his contract, as an implied incident, but is a mere equity, which it is irregular to enforce in a court of common law, so long as it is important to preserve the distinction between the procedures of legal and those of an equitable forum. * * * Such is the equitable doctrine, and such are the grounds of that doctrine a court of equity intervenes in such cases, not by way of enforcing a contract but as in many similar cases, for the prevention of unconscionable conduct, against which there is no legal protection."

In this case there was an express consideration for the extension of time, and still the court would not recognize it as a defense in a court of law, by one who had originally contracted as a principal debtor, but who later claimed the character and privileges of a surety.

It is to be noted also that the Chief Justice in the case last cited points out very clearly that much of the apparent conflict of the courts of this country as to the admissibility of the defense we are now considering is due to the union in some jurisdictions of the legal and equitable systems in the same court. A striking example of this is found in the New York reports in the case of *Metzger* v. *Nova Realty Co.*, 214 *N. Y.* 26; 107 *N. E. Rep.* 1027, which, from a factual standpoint, is identical with the case *sub judice*. There the defense of extension of time as releasing the original obligor was maintained, because the court was enabled to administer equitable relief. This is apparent from the opinion where the mortgagor is dealt with as a surety and his rights 'are denominated "equitable rights" as would have been the case in our own Court of Chancery. But, of course, in New Jersey, our courts of law cannot recognize and enforce such equitable rights.

The defendants, however, insist that they have discovered a new theory by which this court may take jurisdiction of the case. The contention is that when the plaintiff executed the extension agreement with defendants' grantees, it amounted to an alteration or modification of a written instrument, the effect of which was to discharge the defendants from further liability therein, or at least raise an issue of fact as to the damages, if any, which the defendants suffered by reason of said agreement.

At the outset we may say that an alteration of a written instrument, strictly speaking, is some material change made upon the face of the instrument itself by one of the parties thereto without the consent of the other. 2 *Cyc.* 142. There was no such change in this case; therefore no technical alteration.

So far as a modification is concerned, it is, of course, true, as the defendants contend, that a contract cannot be modified without the assent of all the parties thereto. 6 *R. C. L.* 914. It follows, therefore, that in the case, *sub judice,* there was no modification of the bond so far as the defendants are

concerned, because they did not assent thereto and were not contemplated in the extension of time for payment. The defendants have hit the nail on the head, and demolished their own contention when they said in the brief submitted on this matter that, "a contract between plaintiff and defendant *could not be modified* by a subsequent contract between plaintiff and the new vendees," and so the terms of the bond as originally written continue to bind these defendants in a court of law, and the situation cannot be changed except through the medium of payment, release or novation, none of which appear in the case.

The same situation arose in *Palmer* v. *White, supra,* and in all the other New Jersey cases cited earlier in this memorandum, and it is preposterous to suppose that throughout this long line of judicial pronouncement, emanating from the best minds in our judicial history, the theory of release or discharge by alteration or modification was never considered or thought of. The reason it was never specifically mentioned is that it has no applicability to the situation presented for the reasons already stated. The principle established by these cases is that, in a court of law, a principal obligor remains such notwithstanding that the obligee has, for a consideration, granted an extension of time for payment to one who has assumed the payment of the debt as between himself and the obligor. The obligee, by entering into an agreement extending the time for payment, merely accepts additional security, and in none of the New Jersey cases is it suggested that such an agreement altered or modified the original contract with the obligor.

In view of the foregoing cases in our own state, and because we still maintain separate systems of law and equity, I am obliged to hold that the defense of extension of time for payment granted by plaintiff to defendants' grantees is not, under the circumstances, available to the defendants in this action at law. Their remedy, if any, is by bill in chancery to restrain the prosecution of this action in this court as pointed out in *Grier* v. *Flitcroft, supra.*

Before leaving the subject, however, it may be well to consider whether the agreement between the plaintiff and John and Fannie Trupkiewicz, extending the time for paying the bond in question amounted to a novation whereby it was substituted for the original obligation, or whether John and Fannie Trupkiewicz substituted as the sole debtors in the place of the defendants.

In accordance with the general rule it is necessary, in order to effect a novation involving the introduction of a new party, that there be a mutual agreement among the parties to the old and new obligations, whereby the new obligation is substituted for the prior one. Hence, in the absence of an agreement that the original obligation be extinguished and a new one substituted there can be no novation. It is also essential that this new agreement be participated in and assented to by all the parties concerned, for unless all the parties to the old contract consent it cannot be rescinded, and unless all the parties to the new contract consent it cannot be created. 46 *Corp. Jur.* 600, § 43.

The agreement in question here merely extended the time for paying the original bond so far as the grantees, John and Fannie Trupkiewicz, are concerned, and bound them to pay the sums secured at the extended due rate, and to comply with the other terms and conditions of said bond and mortgage. And such agreement further provides as follows: "Nothing herein contained shall in anywise impair the security now held for said debt."

It can hardly be said, therefore, that there was an extinguishment of the original obligation.

Furthermore it is not alleged, nor does it anywhere appear, that the defendants participated in and consented to the extension agreement between plaintiff and the said John and Fannie Trupkiewicz. On the contrary, the defendants expressly deny any participation therein or consent thereto in the seventh paragraph of their "First Separate Defense," wherein it is alleged that "said extension agreement and the negotiations leading to the execution thereof was without the consent or knowledge of defendants."

The case of *Mooney* v. *Newbern,* 137 *Atl. Rep.* 567, is in point. Dolson, the owner of a house in process of construction, under a contract with one Newbern, promised to pay Mooney, an unpaid subcontractor, if he would complete his work, and it was held that this did not constitute a novation releasing the contractor, but a supplemental contract superadding the owner's responsibility to that of the contractor, in the absence of showing that the contractor was consulted and consented to being released. In the course of the opinion the court said:

"In a novation involving three parties such as an old debtor, a new debtor and the creditor, it must appear that all three concurred in the substitution of the new debtor for the old and the release of the latter. * * * The case is barren of any assent between plaintiff [Mooney] and Newbern to the release of the latter and the acceptance of Dolson's obligation in lieu of that of Newbern."

So in the case *sub judice,* the so-called extension agreement did not constitute a novation releasing the defendants as obligors on the bond here involved, but was only a supplemental agreement superadding the responsibility of John and Fannie Trupkiewicz, grantees, to that of the defendants, the original obligors.

As already intimated under our system of jurisprudence wherein law and equity are administered by separate tribunals, and relief to which the defendants may be entitled, must be sought in the Court of Chancery, as was done in *Grier* v. *Flilcroft, supra.*

The question may arise as to whether this matter should not be transferred to the last named court under the provisions of the Transfer of Causes act. *Pamph. L.* 1912, *p.* 417, as amended by *Pamph. L.* 1915, *p.* 39. This cannot be done, however, because it is well settled that the last mentioned act is intended only for the transference of cases where the court in which they are pending has no jurisdiction on the whole case, and not where an equitable defense is attempted to be pleaded to a cause of action cognizable in a

court of law. *Curran* v. *Carroll,* 101 *N. J. L.* 329; *Ireland* v. *Penn Motors Corp.,* 129 *Atl. Rep.* 183; *Scerbak* v. *Lane,* 141 *Id.* 582.

For the reasons already stated the defendants' answer will be stricken out, but the order to that effect shall not be entered until after ten days from October 15th, 1930, in order that the defendants, in the interim, may apply for relief in Chancery if they so desire.