A. DEMOREST DELMAR, PLAINTIFF-APPELLANT, v. THE COUNTY OF BERGEN, DEFENDANT-RESPONDENT.

Argued October 23, 1936—Decided January 22, 1937.

For the plaintiff-appellant, *Morrison, Lloyd & Morrison* (*William J. Morrison, Jr.*), and *Merritt Lane*.

For the defendant-respondent, *Winne & Banta* (*Walter J. Winne*).

The opinion of the court was delivered by

CASE, J. Plaintiff, one of the Common Pleas judges of the county of Bergen, sued for accumulated arrears in salary, the amount of which was in dispute for the reasons hereinafter stated. The judge of the Bergen County Circuit Court, sitting without a jury, awarded judgment to plaintiff for $16,978.50, the amount found to be due after the allowance of a series of deductions imposed by the Bergen county board of freeholders. Plaintiff contends that he is entitled to the full statutory salary and therefore appeals.

Plaintiff's five-year term commenced June 16th, 1932. His salary was then $13,000 per year, fixed by chapter 316, *Pamph. L.* 1931, a general act, which provided:

"1. In any county now or hereafter having by any State or Federal census three hundred thousand or more inhabitants, the salaries of all judges of the court of common pleas hereafter appointed in and for such counties shall be thirteen thousand dollars per annum, and in any county now or hereafter having by any State or Federal census five hundred thousand or more inhabitants, the salaries of all judges of the Court of Common Pleas hereafter appointed in and for such counties shall be fifteen thousand dollars per annum, payable in the manner now provided by law, and such judges hereafter appointed shall devote their entire time to their judicial duties and shall not engage in the practice of law. * * * *"

The population of Bergen county was between three hundred thousand and five hundred thousand.

On February 4th, 1933, the legislature enacted chapter 17 of the Pamphlet Laws of that year, page 32, which provided that:

"The governing body of every county or municipality may, by resolution, direct that the treasurer or other like officer of any county or municipality, deduct from the salary or compensation to be paid to any officer or employe of or person holding a position under the government of this State, whose salary or compensation is paid by any such county or municipality, beginning with the first day of January, one thousand nine hundred and thirty-three, and ending on the thirty-first day of December, one thousand nine hundred and thirty-three, such sum of money as such governing body shall deem proper, but such deductions shall not exceed in percentage the amount authorized to be deducted in any schedule adopted or to be adopted by any such county or municipality for officers, employes and persons holding positions in any such county or municipality; provided, however, that in making deductions from salaries or compensation there shall be no discrimination among or between individuals in the same class of service."

By chapter 446, *Pamph. L.* 1933, *p.* 1244, and chapter 3. *Pamph. L.* 1935, *p.* 13, the provisions of the last named statute were continued until January 31st, 1936. On January 6th, 1933, before the statute was passed, appellant had voluntarily agreed that his salary for the year 1933 should be reduced by $1,640. On September 13th, 1933, the board of chosen freeholders of the county of Bergen, acting under the statute and without plaintiff's consent, imposed an additional deduction of five per centum. In January, 1934, the freeholders, again without paintiff's consent, continued the deduction which totaled $2,290 for the year. On January 28th, 1935, the freeholders, no longer pursuing the formality of a percentage reduction, passed a resolution fixing Judge Delmar's salary, effective February 1st, 1935, at $10,734, payable in semi-monthly installments of $447.25.

There are two basic principles, one laid down in the language of our constitution, the other a judicial construction of that language, which must be observed in fixing the compensation of Common Pleas judges. The first is a portion of article IV, section VII, paragraph 11 of the constitution which provides that "the legislature shall not pass private, local or special laws in any of the following enumerated cases.

that is to say: * * * regulating the internal affairs of towns and counties * * *." It is clear, for reasons presently to be stated, that that compensation is an "internal affair" of the counties. The second, laid down in our cases, is, that a law regulating these salaries differently in the several counties must be predicated upon population, services rendered, or some other general principle applicable to the subject. We proceed to give the reasons for this observation and to name the results that, in our opinion, flow therefrom.

While the administration of justice within a county may not properly be termed an internal affair of the county, *State* v. *Taylor*, 68 *N. J. L.* 276, the amount of compensation which public officers who administer the laws, such as county prosecutors and Common Pleas judges, shall receive from the county treasurer is an affair internal to the county and is within the purview of the constitutional provision, artivle IV, section VII, paragraph 11, *supra*, which forbids private, special or local laws "regulating the internal affairs of towns and counties." *Freeholders of Passaic* v. *Stevenson*, 46 *N. J. L.* 173, 187. We quote from the opinion written for this court by Mr. Justice Van Syckel in the case last cited:

"The beneficial operation of this salutary constitutional provision will be greatly impaired by an interpretation which permits inequalities to any extent to be created throughout the state by special and local laws for the compensation of prosecutors of the Pleas and judges of the Common Pleas of the several counties. Such a construction would withdraw from the people of the counties the protection of this amendment where it is most needed. * * * If laws increasing or decreasing the annual expenses of a county are to be regarded as laws regulating its internal affairs, then surely the subject-matter of this controversy must be governed by general and not by local laws. Such I take to be the correct interpretation of the constitution."

In the application of that language we do not distinguish between the salary of a county prosecutor, which was there the subject of litigation, and the salary of a Common Pleas judge; and quite clearly the court then perceived no distinction. If the fixing of plaintiff's salary were not an internal

affair of the county of Bergen, it would be difficult to understand upon what theory the control of the amount thereof was in anywise left to the board of chosen freeholders.

If, as we find, the legislature is inhibited from fixing compensation for Common Pleas judges by local laws, it follows that the judges of one county may be put upon a salary basis different from the judges of the remaining counties only as there is a distinction, whether by population or otherwise, which forms a reasonable line of demarcation. A law to be general must operate equally upon all of a group of objects which, having regard to the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. *Burlington* v. *Pennsylvania Railroad Co.*, 104 *N. J. L.* 649, 654. In this connection it is to be noted that the issue is not whether the legislation permits appellant to be accorded treatment different from the employes of the county of Bergen, but whether it segregates him from like public officials with whom he should properly be classed. It is not shown that there is any reasonable division by which the county of Bergen may be put in a class by itself in the fixing of the salary of the Common Pleas judges. The 1931 statute, *supra,* which, in its terms, fixed the classification for appellant's salary and which remained the basic act upon which the county deductions were calculated, was made dependent upon county population. The fixing of classes by population has been approved when the subject of the legislation is germane to population. *Mortland* v. *Christian,* 52 *N. J. L.* 521, 537; *Freeholders* v. *Clarke,* 65 *Id.* 271. It was said by Mr. Justice Magie in *Skinner* v. *Collector,* 42 *Id.* 407, that the fixing of salaries of Common Pleas judges on the basis of county population was a resort to a criterion "reasonably likely to justify a distinction in respect to compensation" and that it seemed "that such a classification is entirely proper." There is no claim that the 1931 classification is not sound.

Chapter 17, *Pamph. L.* 1933, *supra,* is general in its terms. Potentially it reaches every county. But the generality is apparent rather than real when applied to the salaries of Common Pleas judges. By taking appropriate action

thereunder Bergen county pays its judges a salary of $10,734. Other counties within the same statutory classification presumably pay their judges $13,000. The legislature, upon whom rests the duty, could not make that salary distinction between courts and counties of the same class. If the deduction be permitted to stand, then there is done by indirection what may not be done directly.

It is urged on behalf of the county that inasmuch as the statute is itself general and by its terms applies to any county or municipality which avails itself thereof, the constitutional requirement is met and that the several localities are not required to act in uniformity, citing the decisions of this court in *Noonan* v. *County of Hudson,* 52 *N. J. L.* 398; *Boorum* v. *Connelly,* 66 *Id.* 197, and *McCarthy* v. *Walter,* 108 *Id.* 282. In the Noonan case there was a construction of an act to authorize the board of chosen freeholders of any of the several counties to lay out, improve and maintain roads. In Boorum *v.* Connelly the statute under review had to do with the election, appointment and terms of local officers. In it we find this sentence by Chief Justice Depue: "These rules for determining the constitutionality of acts of the legislature relating to the internal affairs of municipalities apply only to statutory classifications which are adopted by the legislature to answer some purpose not within the range of the common law classifications of counties, cities, boroughs, towns, townships and villages." In McCarthy *v.* Walter our present Chancellor thus reviewed the Noonan case:

"In Noonan *v.* Hudson County, the court sustained the statute as a constitutional enactment upon the theory that, being a 'Road act,' the procedure laid down followed a practice which was in vogue at the time of the framing of the constitution itself. As the learned Chancellor, speaking for this court (52 *N. J. L.* 400), said: 'The law itself is a complete and efficient piece of machinery, replete with all powers necessary to its effective operation * * * the impracticability of the creation of laws, by the law-making power, to meet all phases of action, however trifling, numerous and local, has necessitated not only the delegation of police powers to municipalities, but also the framing of general laws, which,

so far as they apply to individual cases, are to be called into action by another wisdom than that of a law maker. In other words, the law-making power approves the general scheme of the law and creates a tribunal to determine the wisdom of its application to the several cases which come within its purview. Of this character are * * * the determination of the necessity for public and private roads upon freeholders and surveyors of the highways * * *. The necessity for this limited delegation of legislative power must be its only excuse and probably was the origin of the assumption of the right to make it. However this may be, when the constitution itself was framed the practice of making such delegation in the case of highways prevailed and it was not condemned by that instrument.' "

Respondent's argument may not rightly be made to rest either upon the principle that a municipality may perform under a general statute the acts which such a municipality performed under the common law or upon the principle that the multitude of local problems must of necessity receive local disposition under a general authorizing statute. Our present problem differs in substance and we think in principle from the problems presented in the cited cases. Nothing is shown to us from which may be gathered that the several counties have ever had aught to say regarding the compensation of Common Pleas judges or that the disputed legislation had any common law prototype. Our first constitution provided, article XXI, "that all the laws of this province, contained in the edition lately published by Mr. Allinson, shall be and remain in force * * *." *Allinson,* 160, gives as chapter CCX "An act for the better enabling the judges and justices of this colony to ascertain and tax bills of cost, and for making provision by law *for the payment of the services of the several officers* of the colony, and for preventing the said officers from taking exorbitant fees," passed February 18th, 1747-1748, XXI *George II,* which, at page 165, provides that "the judges and justices fees in the Court of Common Pleas shall be as follows, viz. * * *," thereupon listing the precise fees to be paid. We have no reason to doubt that never until the variation now attempted to be effected have the counties had

the least control over the amount of the fees or the compensation to be paid to Common Pleas judges; and therein lies an answer to the suggestion that the plaintiff's salary is one of the multitude of local problems which of necessity must receive local disposition.

The Courts of Common Pleas are not constitutional courts in the sense that the legislature may not alter or abolish them (*Kenny* v. *Hudspeth* (*Court of Errors and Appeals*), 59 *N. J. L.* 504, 530), but they have, and have had since the adoption of the provincial constitution of 1776, constitutional attributes. Article XII of that constitution provided "* * * that the judges of the Inferior Court of Common Pleas in the several counties * * * shall continue in office for five years * * * and that they shall be severally appointed by the council and assembly in manner aforesaid and commissioned by the governor * * *." Under the present constitution the Court of Common Pleas is, by article VI, section I, among the "inferior courts" which "the legislature may alter or abolish, as the public good shall require;" but nevertheless section VI of the same article is devoted exclusively to settling certain details about the numbers, appointments and commissions of Common Pleas judges. The 1844 constitution originally provided in article VII, section II, paragraph 2, that "judges of the Courts of Common Pleas shall be appointed by the Senate and General Assembly, in joint meeting. They shall hold their offices for five years; but when appointed to fill vacancies they shall hold for the unexpired term only." That paragraph still so reads, but (*Schalk* v. *Wrightson,* 58 *Id.* 50), was impliedly repealed *pro tanto* by the 1875 amendment whereby paragraph 1 of the section is made to read: "* * * Judges of the inferior court of common pleas shall be nominated by the governor and appointed by him with the advice and consent of the senate." It is impressive that for nearly one hundred years it was the constitutional duty of the legislature to appoint, and for the past sixty years it has been the like duty of the governor, with the advice and consent of the senate, to appoint the Common Pleas judges. The legislative and executive branches have continuously and respectively accepted and performed those duties.

Fixing the amount of the compensation (*Kenny* v. *Hudspeth,* 59 *N. J. L.* 320) and source from which the compensation should be paid were left to the wisdom of the legislature. It may be that there is a legislative duty to fix the tenure, emoluments and terms of office implicit in the expressed duty to appoint the functioning judges of an important and busy court which, while it remains unaltered and unabolished, has a constitutional right to the services of judges. But, however that may be, when the emoluments are actually fixed the action accomplishing that result must be done in conformance with the constitution. Omitting the present issue, the legislature has always and directly performed that duty. Except for a series of acts presently to be noted, the compensation has been fixed by general laws. It should be so fixed. See *Freeholders* v. *Stevenson, supra* (at *p.* 183), and *Woodruff* v. *Freeholders of Passaic, infra.* In the first instance there were taxed costs provided by statute applicable to all Common Pleas Courts throughout the state; for a time and throughout the several counties, in addition to the fees, there was a *per diem* payable by the respective county collectors, *e. g., Pamph. L.* 1850. *p.* 285: *Nixon* 849, § 9. Of like import, but as supplements to "An act to provide for the support of the government of this state and to fix the salaries of public officers," see *Pamph. L.* 1865, *ch.* 487, *p.* 908; *Pamph. L.* 1867, *ch.* 312, *p.* 700; *Pamph. L.* 1869, *ch.* 196, *p.* 511, *Revision of* 1877, *p.* 1038, *pl.* 7. See, also, 3 *Gen. Stat., pp.* 2970 and 2971, for statutes fixing annual salaries of the president judges, graded according to county population, and in lieu of fees; as also chapter 140, *Pamph. L.* 1900; 2 *Comp. Stat., p.* 1725. In a footnote on page 1124. 1 *Gen. Stat.,* is to be found a list of numerous special acts to facilitate judicial proceedings in different counties in the state. Most of them were passed prior to the constitutional amendment adopted in 1875 which, as article IV, section VII, paragraph 11, *supra,* forbids the legislature to pass private, local or special laws regulating the internal affairs of towns and counties. A half dozen of the special acts were passed subsequent to the constitutional amendment. We find no report of an attempt to question their constitutionality although they were inci-

dentally mentioned in *Skinner* v. *Collector, supra,* 410; but that those of them which after the constitutional amendment fixed salaries for Common Pleas judges in isolated instances and without effort at classification were in that respect unconstitutional seems clear (see *Freeholders* v. *Stevenson, supra,* at *p.* 183), and it is likely that the general acts beginning with chapter 198, *Pamph. L.* 1879, and including chapter 61, *Pamph. L.* 1881; *ch.* 115, *Pamph. L.* 1882, and chapter 246, *Pamph. L.* 1886, represent, in increasing degree, appreciation by the legislature of that constitutional aspect.

It seems wholly illogical to consider that the Common Pleas Courts are under the control of the boards of chosen freeholders, or, having regard for the duties of those judges and for their historic, constitutional and legislative background, that their salaries are to be classed with the laying out of local roads and the election or appointment of local officers as within the scope of freeholder control, or indeed that the legal reasoning applied to those subjects is controlling upon the question of judges' salaries.

If it be assumed that the legislature may delegate the authority to fix compensation of Common Pleas judges the delegation of authority must be accompanied by the statement of some rule or policy that will give limitation and direction to the power of the instrumentality. *Schechter* v. *United States,* 295 *U: S.* 495; 79 *L. Ed.* 1570; see, also, *State Board* v. *Newark Milk Co.,* 118 *N. J. Eq.* 504. We find nothing *contra* in the cited case of *Attorney-General* v. *McGuinness,* 78 *N. J. L.* 346. It is said that the statute under review states a valid policy of sufficient comprehensiveness to enable the county to do what it did. We think not. The gauge fixed by the statute is that which the local governing body thinks wise to adopt for its own employes. That merely moves the discretion one step more distant. Beyond that the body is left to act as it "shall deem proper." What, in the present instance, the board of chosen freeholders deemed wise to put into effect against its own employes does not at all conform to the requirement that the salaries of Common Pleas judges shall be uniform within the class to which they belong. Were the other counties which are in the same salary class with Bergen

to avail themselves of the 1933 statute and reduce the salaries of their judges, there is no standard by which a uniformity of reduction would be assured. Some powers in their nature may not be delegated. *State, Gaines, Prosecutor,* v. *Hudson County Avenue Commissioners,* 37 *Id.* 12. It is not made clear to us how an instrumentality may be clothed with delegated power over a subdivision of a class when the legislature itself must act with respect to the class as a whole, and we think, as will be further elucidated in the next paragraph, that this may not be done with respect to Common Pleas judges. Our conclusion on this branch of the case is that the several resolutions of the Bergen freeholders are void and of no effect as against Common Pleas judges first because the delegation of authority was not adequate to sustain them and second because they impose prejudicial inequalities upon selected members of a general class of public officers and must in this respect be treated as though passed directly by the legislature from which the delegated authority came.

A Common Pleas judge is a public officer. This being so, a further constitutional provision contained within paragraph 11 of section VII, article IV, comes into operation, namely, that "the legislature shall not pass private, local or special laws * * * creating, increasing or decreasing the percentage or allowance of public officers during the term for which said officers were elected or appointed." As we have already observed, the statute does not itself decrease the plaintiff's salary. It does not, in terms, mention either the plaintiff or his salary. It delegates to the local governing body a portion of the legislative authority, and the defendant contends that the power thus broadly delegated may be specifically applied against the plaintiff. We must therefore view the supplemental act of the designated instrumentality along with the statute from which it is said to emanate in order to determine whether the net result makes a special case of the plaintiff as contrasted, not with other employes of the county of Bergen, but with the remainder of the Common Pleas judges comprehended within his state salary classification. By this we do not intimate that the legislature may not change the statutory classification; but a change, if and when

made, must be general and comprehensive of a class made up of similarly placed officers throughout the state, for, as we have seen, it would be against reason that the legislature, itself constitutionally restricted, should be able to delegate to a legislatively created branch of the state government an authority freed of that restriction. If either by original or delegated legislation the plaintiff was thus prejudiced during his term of office apart from his fellows, the effective legislation, is, as to him, special and unconstitutional. A statute which creates inequalities in the salaries of county prosecutors without regard to population, service rendered, or other general rule has been held not to be a general law. *Woodruff* v. *Freeholders of Passaic,* 42 *N. J. L.* 533. A law which does not operate equally on all of the class to which it relates, but creates preferences and establishes inequalities, is not a general law. *Van Riper* v. *Parsons,* 40 *Id.* 1.

It clearly appears that both the passage of the 1933 statute and the action of the board thereunder occurred during the plaintiff's term of office, that by the conjunction of this legislative and board action a preference was created against the plaintiff whereby inequalities were created which set him apart, to his disadvantage, from all of the Common Pleas judges of his class outside the county of Bergen. It follows that the effort of the board of chosen freeholders to apply the provisions of the statute to the plaintiff was unconstitutional and of no effect.

The questions herein determined do not involve the authority of the legislature to reduce, by general law, the salary of Common Pleas judges during the term of those public officers.

The judgment below will be reversed. We believe that our findings are dispositive of the litigation. The Circuit Court will therefore enter judgment for the appellant for the unpaid balance of his salary without the deductions attempted to be made under the statute.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, CASE, BODINE, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, COLE, JJ. 14.