WILLIAM B. HARLEY, PLAINTIFF, v. THE COUNTY OF PASSAIC, DEFENDANT.

Decided July 31, 1937.

For the plaintiff, *Archibald Kreiger*.

For the defendant, *Harry L. Schoen*.

WOLBER, C. C. J. This matter comes before me on an application for an order to strike out the answer filed in the above cause upon the following grounds: that the denial of the complaint and the first, second, third and fourth separate defenses are sham or frivolous.

In his complaint plaintiff sets forth that on April 1st, 1929, he was nominated and appointed by the governor, by and with the advice and consent of the senate of this state, and commissioned by the governor and thereafter accepted the office of judge of the Court of Common Pleas for the county of Passaic for the term of five years, as provided by law, and acted as such during his term; that on June 1st, 1931, in accordance with the statute, he elected to serve full time as such judge of the Court of Common Pleas, and by reason thereof was entitled to receive for his services the salary of $13,000 per year; that during the year 1933 and until April 1st, 1934, he was entitled to receive said salary of $13,000 per year; that during 1933 he was paid by defendant $9,750, and during the months of January, February and March, 1934, he was paid the sum of $2,437.50; that he has demanded payment of the balance of his compensation amounting to $4,062.50, but that the defendant, by its board of chosen freeholders, has neglected and refused to cause its county treasurer to pay the above mentioned balance of his salary to the plaintiff, which he was by law entitled to receive.

Plaintiff avers that there is due and owing to him said sum of $4,062.50, together with interest to be computed on each monthly sum when the same became due and payable, and demands judgment, together with interest and costs.

In its answer, besides a general denial, the county sets forth in its first separate defense that the plaintiff, as a public officer receiving his salary from the county of Passaic, was well acquainted with the financial condition of the county of Passaic and its hardship in paying full salaries of its officers and employes, and that he did offer to help and assist the situation in which the defendant found itself on or about January 1st, 1933, and about said time consented and voluntarily donated and contributed twenty-five per cent. of his yearly salary back to the county. The payroll sheets of the county of Passaic, which were approved semi-monthly for payment by each department, show that from January 1st, 1933, until February 15th, 1933, the payroll sheets of the plaintiff's department designate thereon the following stipulation: "Annual Salary, $13,000, Amount Due, $406.25. Less 25%, $135.42, donated." The payroll sheets *as approved semi-monthly by the plaintiff* from February 15th, 1933, until March 31st, 1934, when the period of the plaintiff's services in the county of Passaic terminated, designate thereon the following stipulation: "Annual Salary, $13,000, Amount Due, $406.25, Less 25%, $135.42, deducted in accordance with Par. 1, Chap. 17, Laws of 1933." *N. J. Stat. Annual* 1933, § *136-1320A (10).

It further sets forth that the plaintiff received and approved his semi-monthly salary payment sheets from the treasurer of the county of Passaic, which bore a twenty-five per cent. voluntary donation of the plaintiff, and that thereafter he accepted from the county his semi-monthly salary checks, less the donation of twenty-five per cent. In this defense, the county further avers that it was the intention of the plaintiff, in relinquishing a portion of his salary, to help the county to rebuild its financial status during the period of economic stress, and that during his entire term of office no formal notice of dissent or disavowal from such intention of ·

the parties was ever sent to the defendant, nor did the defendant, in any other way or at any other time, receive any notification of any protest or dissent to this agreement between the plaintiff and the county; that the plaintiff, having made this voluntary donation of twenty-five per cent. of his salary to the county, and it being the intention of the parties that such donation was made for the purpose of helping and aiding the defendant in its financial condition at the time, is now barred by law from recovering the same from the defendant.

The second separate defense sets up waiver and estoppel of any right of the plaintiff to recover any difference in his salary from the defendant.

The third separate defense relies upon the provisions of chapter 17 of the laws of 1933 (*N. J. Stat. Annual* 1933, § *136-1320A(10)) and chapter 446 of the laws of 1933 (*N. J. Stat. Annual* 1934, § *136-1320A(10)) for power and authority in the county to reduce plaintiff's salary, by virtue of which it passed resolutions reducing the yearly salary of the plaintiff by twenty-five per cent.

The fourth separate defense sets up that the plaintiff accepted such reduction in salary without protest or disavowal, as a complete accord and full satisfaction of any salary due and owing to him from the county of Passaic.

Plaintiff submits an affidavit that he believes there is no defense to this action and substantiates the allegations of his complaint. He further says that on January 22d, 1937, the Court of Errors and Appeals in the case of *Delmar* v. *Bergen County,* 117 *N. J. L.* 377; 189 *Atl. Rep.* 75 (Case, J.), held that chapter 17 of the laws of 1933, *supra,* and subsequent legislation continuing that law was unconstitutional as applied to a Common Pleas judge of the county of Bergen, a county of the second class, and that the office formerly occupied by him was in the same class and category as that in the case mentioned; that on February 17th, 1937, he made a demand in writing upon the board of freeholders of Passaic county for the return of $4,062.50, having been illegally deducted from his salary because it was done under an unconstitutional statute.

The county has submitted no affidavits to support its defenses.

It will be observed that chapter 17 of the laws of 1933 was approved on February 4th, 1933, and chapter 446 of the laws of 1933 was approved December 7th, 1933.

In *Delmar* v. *Bergen County, supra,* the plaintiff, one of the Common Pleas judges of the county of Bergen, sued for accumulated arrears in salary, the amount of which was in dispute. The judge of the Bergen County Circuit Court, sitting without a jury, awarded judgment to the plaintiff for the amount found to be due after the allowance of a series of deductions imposed by the Bergen county board of freeholders. The plaintiff contended that he was entitled to the full statutory salary. Mr. Justice Case in that case said (at *p.* 379) :

"There are two basic principles, one laid down in the language of our constitution, the other a judicial construction of that language, which must be observed in fixing the compensation of Common Pleas judges. The first is a portion of article IV, section VII, paragraph 11 of the constitution which provides that 'the legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say : \* \* \* regulating the internal affairs of towns and counties \* \* \*.' It is clear, for reasons presently to be stated, that that compensation is an 'internal affair' of the counties. The second, laid down in our cases, is, that a law regulating these salaries differently in the several counties must be predicated upon population, services rendered, or some other general principle applicable to the subject."

Chapter 316 of the laws of 1931 (*N. J. Stat. Annual* 1931, § 50-112t(1)) a general act, which likewise applies to the instant case, fixed the classification for the judge's salary. It remained the basic act upon which county deductions were calculated, and was made dependent upon county population.

Mr. Justice Magie in *Skinner* v. *Collector* (*Supreme Court,* 1880), 42 *N. J. L.* 407, said that the fixing of salaries of Common Pleas judges on the basis of county population was

a resort to a criterion "reasonably likely to justify a distinction in respect to compensation," and that it seemed "that such a classification is entirely proper."

In the Delmar case the court held that while chapter 17 of the laws of 1933, *supra,* was general in its terms and potentially reached every county, its generality was apparent rather than real when applied to the salaries of Common Pleas judges, and that if the legislature, upon whom rests the duty of fixing their compensation, could not make salary distinction between courts and counties of the same class, its instrumentality, the county, could not do that by indirection which might not be done by it directly.

The court further held that nowhere in the history of this state until this legislation of 1933 did the several counties ever have aught to say regarding the compensation of Common Pleas judges, nor was there any common law prototype for such legislation. The legislature, and it alone, has always directly performed that duty. While the Courts of Common Pleas are not constitutional courts in the sense that the legislature may not alter or abolish them, they have had, since the adoption of the provincial constitution of 1776, constitutional attributes.

The Delmar case holds that a Common Pleas judge is a public officer, and that if either by original or delegated legislation, the plaintiff was thus prejudiced during his term of office apart from his fellows, the effective legislation is, as to him, special and unconstitutional.

The third separate defense must therefore be stricken as being frivolous.

The fourth separate defense of accord and satisfaction, not being supported by any facts in affidavit form, will be stricken as sham. *Orlando* v. *County of Camden,* unreported opinion of Palmer, C. C. J., June, 1937, Camden County Circuit Court.

It has been held that where the defendant fails to submit to the court upon a motion like this affidavits or other proofs as to the facts set forth in his answer, including the separate defenses, if the plaintiff's affidavit fully sets out the facts

upon which his cause of action is based and fully complies with rule 81 of the Supreme Court, the court must assume that the facts set forth in the plaintiff's affidavit are true, and that the defendant cannot show such facts as would be sufficient to entitle him to defend. *Hunt* v. *Gorenberg* (*Supreme Court,* 1930, Ackerson, S. C. C.), 9 *N. J. Mis. R.* 463; 155 *Atl. Rep.* 881; *Schiff* v. *Alexander* (*Supreme Court,* 1925, *per curiam,* on opinion of Ackerson, S. C. C.), 3 *N. J. Mis. R.* 817; 130 *Atl. Rep.* 133; *Larner* v. *Montclair* (*Court of Errors and Appeals,* 1923, *per curiam*), 99 *N. J. L.* 510; 123 *Atl. Rep.* 886; *Pusatere* v. *New Amsterdam Casualty Co.* (*Court of Errors and Appeals,* 1936, *per curiam*), 116 *N. J. L.* 359; 184 *Atl. Rep.* 513.

In *Doyle* v. *County of Warren* (*Warren County Circuit Court,* 1937), 15 *N. J. Mis. R.* 434; 192 *Atl. Rep.* 390, Judge Lawrence held, where the county contended the officer was estopped, that public policy would intervene to invalidate any agreement to accept a compensation less than that fixed by law, notwithstanding in that particular case the stipulation showed that the officer protested to the salary reduction.

In *Geddis* v. *Westside National Bank of West Paterson* (*Passaic County Circuit Court,* Newman, S. C. C.), 7 *N. J. Mis. R.* 245; 145 *Atl. Rep.* 731; *affirmed* (*Court of Errors and Appeals,* 1929, on opinion below), 106 *N. J. L.* 238; 148 *Atl. Rep.* 917), it was held that the assignment of future earnings of a public officer in this state is declared to be void as against public policy, and that where the agreement was void *ab initio,* any conduct on the part of the plaintiff could not operate to make it valid, and thus frustrate the policy of the law.

In *Kip* v. *Peoples Bank and Trust Co.* (*Court of Errors and Appeals,* 1932), 110 *N. J. L.* 178; 164 *Atl. Rep.* 253, where the plaintiff notary made a contract with the bank to serve for a fixed compensation and accepted it in full satisfaction, and the bank collected and retained the notary fees, Mr. Justice Case (at *p.* 183) said:

"We think that a contract between a notary public and a bank that anticipates and authorizes such a procedure is to

that extent contrary to public policy and void. And because the undertaking was contrary to public policy, subsequent conduct of the plaintiff that went no further than the naked carrying out of the bargain, even accepting the agreed compensation, did not accomplish full satisfaction or create an estoppel. We express no opinion on the power of the officer to waive or remit a fee if and after it shall have been earned. That question is not before us."

In *Weart* v. *First National Bank of Dunellen* (*Court of Errors and Appeals,* 1935), 115 *N. J. L.* 128; 178 *Atl. Rep.* 758, Mr. Justice Case reviewed the cases of *Geddis* v. *Westside National Bank of West Paterson, supra,* and *Kip* v. *Peoples Bank and Trust Co., supra.* The facts in that case showed that the plaintiff notary was cashier of a country bank. He voluntarily and perfunctorily executed notarial papers, collected the notarial fees in the name of the bank, put them into its treasury, credited the fees as bank earnings, and reported them as such to the federal government and his board of directors. He further sat by as a director and participated in the acceptance of these moneys as bank earnings applicable to dividends, aided in the declaration of dividends therefrom, and as a stockholder acquiesced therein and received his *pro rata* share of the dividends. Mr. Justice Case held that he had estopped himself from thereafter claiming that the money should have been paid to him and was his property rather than that of the bank, and said (at *p.* 131):

"In the absence of some legal taint, as for instance that the act is required by and done in fulfillment of a contract against public policy, it is lawful for a notary public to waive or remit a fee after it has been earned, to take such a position with respect to it that he may be held to have waived it. We find nothing contrary to public policy in the voluntary waiver by a notary public of his statutory fee for an accomplished service."

As the second separate defense does not set forth facts to indicate a voluntary waiver of his unpaid salary by the plaintiff after it was earned, it is frivolous and must be stricken.

We will next consider the first separate defense which the pleader bases on a voluntary donation of the reduction of salary to aid the county in its financial distress. There are two cases recently decided by the Superior Court of Pennsylvania on March 10th, 1937, in which there is an interesting discussion of the subject of voluntary donation of salary by a public officer, namely, *Taylor* v. *City of Philadelphia* (*Pa. Superior Court,* 1937), 190 *Atl. Rep.* 663, and *Patton* v. *City of Philadelphia* (*Pa. Superior Court,* 1937), 190 *Atl. Rep.* 670.

In the Taylor case, election registration commissioners formally protested the reduction. In the Patton case, the record showed a magistrate consented to the reduction of one year's salary at a meeting called for that purpose by the magistrates for the city and county of Philadelphia, but failed to support a finding of voluntary relinquishment of his unpaid salary for the subsequent year.

In the Taylor case, President Judge Keller said (at *p.* 669):

"We know of no public policy of this commonwealth which prevents a municipal or state officer, in times of great public distress, from voluntarily donating to his city, county, or state such part of his salary or emoluments of office as he sees fit to give up for the relief of the municipality or state. While his salary may not be diminished during his term of office, he can do what he will with his own, and if he chooses to devote part of it to the relief of the city or state, and the latter accepts his voluntary donation, no public policy forbids it. *Schuh* v. *City of Waukesha* (1936), 220 *Wis.* 600; 265 *N. W. Rep.* 699. The transaction is most clearly exhibited by the municipality or state paying the officer his full salary and the latter then paying back, by check, so much thereof as he chooses to devote to the relief of city or state. But that is not the only way of accomplishing the desired result, and any form may be adopted which carries out the intention of the parties, provided it is established to be the voluntary act of the officer, and clearly and definitely proved to be such, and is to continue only so long as he wishes. No

*contract* relative to the execution or continuance of such a gift or donation can be enforced. It must be wholly voluntary and remain so. It does not arise by waiver or estoppel."

Judge Keller further held that the act of the officer must be his own individual, voluntary act, and it must be clearly and unequivocally established to be such. The mere receipt of part of what he was legally entitled to, without more, was not enough to establish his voluntary acceptance of the part for the whole. He further said that *the municipality,* in order to escape paying the plaintiff his full salary, was required to show some clear and unequivocal act by him evidencing his voluntary donation of the unpaid part of it to the city.

Even if I assume that the first separate defense sets forth a voluntary donation by the plaintiff of his reduction of salary after it was earned, the failure of the defendant to submit facts by affidavit showing a clear and unequivocal voluntary gift or donation to the county of this reduction, makes the defense sham, and it must therefore be stricken.

Defendant contends that interest should only be allowed on the claim, if at all, from the time of demand and refusal.

In *Hudson County National Bank* v. *Bayonne (Supreme Court,* 1934), 113 *N. J. L.* 258; 174 *Atl. Rep.* 241, Mr. Justice Perskie (at *p.* 264) laid down the following rule in a suit which involved an assigned claim for professional services rendered to a municipality, quoting from 19 *R. C. L.* 1048, 1049, ¶ 337:

"It must be regarded as well settled that a claim against a municipality, although liquidated and due at a definite date, does not draw interest until demand has been made for its payment, unless it is otherwise agreed. This rule is independent of any statutory requirement such as the familiar one that notice of claim must be served on the municipality sometime before suit can be commenced thereon. It is based rather on the consideration that it would be inconvenient and burdensome for the officials of a municipality to seek its creditors and tender payment of their claims, and also that it would be oppressive and unjust to permit creditors of a

municipality with good credit to turn claims into investments through omitting to present them and then collecting interest thereon."

He also quoted from the opinion of Mr. Justice Dixon in *Naar* v. *City of Trenton* (*Supreme Court,* 1880), 42 *N. J. L.* 500, that where payment of the original debt of a municipality was demanded and refused, interest would then begin to accrue thereon, under our law, at six per cent. per annum.

Plaintiff's claim for interest should commence as of February 17th, 1937, when he made his demand in writing upon the board of freeholders for the return of the amount illegally deducted from his salary, and any order for summary judgment should allow interest in conformity with that finding.

I will therefore sign an order striking the answer of the defendant, without costs.