JONAS TUMEN, PLAINTIFF, v. THE COUNTY OF MON-
MOUTH, DEFENDANT.

Decided May 12, 1938.

For the motion, *Tumen & Tumen* (*David H. Davis*).

Opposed, *Snyder, Roberts & Pillsbury* (*John M. Pillsbury*).

LAWRENCE, S. C. C.   Plaintiff served as prosecutor of the
Pleas of the county of Monmouth, under the commission of
the governor, from April 1st, 1930, to March 31, 1935, at
an annual salary of $7,000, fixed by law in a county border-
ing on the Atlantic ocean, containing according to the state
census of 1920 (*Pamph. L.* 1931, *ch.* 271, *p.* 681), a popula-
tion of between one hundred thousand and two hundred thou-
sand. *Rev. Stat.* 1937, 2:182-10, *p.* 502.   Monmouth county
came within this classification (see Legislative Manual 1938,
page 230).   The salary was paid semi-monthly in the amount
of $291.66 by the county treasurer, on verified vouchers sub-
mitted by plaintiff as such officer to the board of chosen free-
holders and approved by it.   From July 1st, 1932, to Decem-
ber 31st, 1933, the vouchers were paid, but there was deducted
from the amount ten per cent., and from January 1st, 1934,
to March, 1935, fifteen per cent.   It is these deductions,
aggregating $2,318.87, which plaintiff seeks in this suit to
recover of the county on the ground that the statutes under
which they were made (chapters 17 and 446 of the laws of
1933, and chapter 2 of 1935) were unconstitutional and the
deductions consequently without lawful authority.

It seems to have been recognized, however, and correctly, that the prosecutor of the Pleas is a state officer and that while his salary is paid by the county (*supra,* 2:182-11) it nevertheless could not be reduced without his consent; for, on June 22d, 1932, "due to the financial condition of the county," an emergency resolution was adopted by the board of chosen freeholders establishing a graduated deduction from the salary or compensation to be paid to any officer or employe holding a position under the government of the county, the deduction in cases where the annual salary was in excess of $4,500 to be ten per cent., to which was added the following:

"Be it further resolved, that all officers, position holders and employes of the county, whose compensation for services as such, payable out of county funds, is exempted from control by this Board because fixed by statute, be and they are hereby respectfully urged to co-operate with this board, with a view to facilitating the general application of the schedule of temporary deductions of compensation to all public officers, position holders and employes, by waiving such exemption by execution and delivery to the county treasurer charged with the paying of such compensation of a written instrument to that effect and instructing such authority to deduct a proportionate part of their compensation in accordance with the schedule set forth in this resolution."

Thereupon, and on June 27th, 1932, plaintiff signed the following:

"To the Treasurer of the County of Monmouth:

Pursuant to the provisions of the foregoing resolution passed by the Board of Chosen Freeholders of the County of Monmouth on Wednesday, June 22d, 1932, I do hereby consent to the deduction by you of 10%—percentum—of my salary and do hereby waive any rights which I may have under the constitution and laws of the State against such deduction, which reduction of 10 per centum is to be made in accordance with the schedule prescribed for other officers and employes of the County, the above deduction, however, to be made only for the period beginning July 1st, 1932, and ending December 31st, 1932."

Thereafter, during the period, he presented to the board verified semi-monthly vouchers which were approved by the board and paid by the county treasurer, for salary installment as prosecutor of the Pleas of the county in the amount of $291.66, "less ten per cent. voluntary cut" of $29.17, which payments he accepted without protest or question.

At the organization meeting of the board on January 2d, 1933, a similar resolution was adopted by it, it again requesting the officers whose salaries were fixed by statute and not controlled by the board to accept a voluntary cut of ten per cent. for the year. While not consenting in writing, plaintiff again acquiesced and during the year presented semi-monthly vouchers for $291.66, "less ten per cent. voluntary cut" of $29.16, which were approved by the board and paid by the county treasurer. The payments were accepted by him without dissent or protest.

At the organization meeting of the board on January 2d, 1934, it again adopted a resolution providing for a graduated deduction of salaries paid to officers or employes holding a position under the government of the county, whether paid directly or indirectly out of county funds, effective January 1st, 1934, to December 31st, 1934, which provided, however, for a deduction of fifteen per cent. from all salaries in excess of $2,501. Although not formally consenting in writing to such deduction, plaintiff as prosecutor of the Pleas of the county again presented semi-monthly vouchers for his salary in the amount of $291.66, "less fifteen per cent. voluntary cut" of $43.74.

Finally, at the organization meeting of the board on January 2d, 1935, "due to the business emergency and the financial condition of the county," a like resolution was adopted for a similar deduction from all salaries in excess of $2,601, and from January 1st, 1935, to March, of the same year, plaintiff's semi-monthly vouchers for salary as prosecutor of the Pleas were made out by him in the amount of $291.66, "less fifteen per cent. voluntary cut" of $43.75. These were likewise approved, paid and the money accepted by him without question.

The present suit is predicated on the holding in *Delmar* v. *Bergen County,* 117 *N. J. L.* 377; 189 *Atl. Rep.* 75; *Doyle* v. *County of Warren,* 15 *N. J. Mis. R.* 434; 192 *Atl. Rep.* 390, and *Harley* v. *County of Passaic,* 15 *N. J. Mis. R.* 641; 194 *Atl. Rep.* 298, that the statutes (*supra*) under which the deductions were made contravened the interdict of the state constitution against special legislation regulating the internal affairs of towns and counties and involved an improper delegation of power to boards of chosen freeholders which the legislature alone could exercise as to state officers by general legislation on some rational basis such as population.

Defendant's answer as amended sets up three defenses: first, that the acts in question were not unconstitutional as to it, since the county of Monmouth was the only county in the state bordering on the Atlantic ocean containing a population of between one hundred thousand and two hundred thousand affected by the statute fixing the annual salary stated for the prosecutor of the Pleas serving therein; second, that plaintiff is estopped, by reason of his voluntary consent to accept his salary, less the indicated deductions, upon which the county relied and appropriated the moneys covered to use otherwise authorized by law; and, third, his waiver of right to receive the full salary provided by law, as set forth in the vouchers presented, with the stated deductions, following the rendition of the service covered thereby, bars recovery.

Plaintiff moves to strike the answer as sham or frivolous because the constitutional question was settled adversely to the position here taken by defendant in the cited cases and on the ground that neither the rule of estoppel nor that relating to the effect of waiver applies, reliance being had on *Geddis* v. *Westside National Bank,* 106 *N. J. L.* 238; 148 *Atl. Rep.* 917, and *Kipp* v. *Peoples Bank and Trust Co.,* 110 *N. J. L.* 178; 164 *Atl. Rep.* 253, holding agreements of public officials to forego their fees before they are earned or before the services contemplated are rendered are invalid because contrary to public policy.

It would appear that the first defense set forth in defendant's answer should be stricken. The acts under which the

deductions giving rise to the present suit were made by the county were found to be in *Delmar* v. *Bergen County, supra,* special legislation and an unconstitutional delegation of power, that is to say, a power which should have been exercised directly as to state officers (including prosecutors of the Pleas) by the legislature. It may also be observed that although the county of Monmouth, under the census of 1920, was the only county bordering on the Atlantic ocean containing a population of between one hundred thousand and two hundred thousand; if population is to be regarded as the criterion or basis for general legislation in fixing the salaries of state officers serving in the several counties, then there were at least two others within the designated limits and in which the same salary was provided for the prosecutor of the Pleas therein, to wit, Mercer and Middlesex. *Rev. Stat.* 2:182-10, (2). As a matter of fact each of the latter had a larger population than Monmouth and what sound reason existed for distinguishing the county because of geographical location while giving it the same classification relatively as to population in fixing the salary of the prosecutor of the Pleas does not appear. The acts purporting to provide for deductions in salaries and delegation of the authority to boards of chosen freeholders did not provide for any uniformity in that regard and the application doubtless varied in each of the counties named. They were unconstitutional and no reason is discovered for declaring them constitutional in their application to the county of Monmouth. The first defense in defendant's answer will therefore be stricken.

But it does not follow that plaintiff is entitled to recover that which he seeks in this suit. The doctrine of estoppel and the rule as to waiver appear to apply to him. It was pointed out in *Smith* v. *National Commercial Title and Mortgage Guaranty Co.,* 120 *N. J. L.* 75; 198 *Atl. Rep.* 407, that "one of the essential elements of estoppel is that the party who seeks the benefit of it must have relied upon the representations or conduct of the other party and thereby have been led into such a course of conduct that he will now be substantially prejudiced if the other party be permitted

to repudiate his former action or representation. Waiver is a designation of the act, or of consequences of the act, of one side only, and it refers to an intentional abandonment or relinquishment of a known right."

It is clear, as disclosed by the affidavits presented on the argument of the motion here considered, that in 1933 defendant county, through its board of chosen freeholders, relied on plaintiff's written consent to co-operate in the financial emergency existing and acted thereon by deducting the percentage of his official salary indicated and diverted the money to other county uses. It is obvious moreover that he, too, intended such action as his vouchers during the period plainly show. All of them were for services theretofore rendered. Again in 1934 and 1935, he voluntarily after similar services had been performed formally, through the medium of vouchers, waived collection of the percentage of his salary therein stated. No legislation, in fact, was required to enable him to do so, after the installment of salary falling due had been earned. *Weart* v. *First National Bank of Dunellen,* 115 *N. J. L.* 128; 178 *Atl. Rep.* 758, is authority for the statement that "in the absence of some legal taint, as for instance that the act is required by and done in fulfillment of a contract against public policy, it is lawful for a notary public (a public officer) to waive or remit a fee after it has been earned, and for him, after the fee has been earned, to take such a position with respect to it that he may be held to have waived it." It was therefore held that there is nothing contrary to public policy in the voluntary waiver by such an official of his statutory fee for an accomplished service.

There was no suggestion on the argument of the motion that there is any distinction between the fee of a notary and the salary of any other public official as to the right to waive after being earned in circumstances such as were here evidently involved. At least nothing of a persuasive factual or legal nature developed which makes the finding of such a distinction obligatory. Plaintiff's relation to the transactions throughout, it appears, did not at any time assume a

condition of compulsion or legal obligation on his part. What he did seems to have been entirely voluntary, after his salary in the manner in which it was being paid had been earned, and the natural inquiry arises whether it is not now too late to permit him to retrace his steps and recover that which he so clearly relinquished to the use of the county in the financial emergency which was then regarded as existing and affecting the situation of the county in that respect. Indeed, the affidavits tend to indicate that the deductions made from plaintiff's salary did not at any time result from any claimed right within the power of the county to exercise, but as action freely taken by him in compliance with the request of the board of chosen freeholders for co-operation.

The conclusion is that the constitutional question should be stricken from defendant's answer and that those defenses covering estoppel and waiver should be allowed to stand.