LᴇROY VANDER BURGH, PLAINTIFF-RESPONDENT, v.
COUNTY OF BERGEN, DEFENDANT-APPELLANT.

Argued February 4, 1938—Decided June 24, 1938.

For the plaintiff-respondent, *LeRoy Vander Burgh, pro se.*

For the defendant-appellant, *Walter G. Winne.*

The opinion of the court was delivered by

CASE, J.  The appeal is from a judgment for the plaintiff entered in the Bergen County Circuit Court upon the striking of the answer as "sham and frivolous." We observe no reason for condemning the answer as sham. Whether it is frivolous or not depends upon the applicability of the legal principles which it seeks to invoke.

The complaint alleges that plaintiff was, until May 20th, 1937, the judge of the District Court of the First Judicial District of the county of Bergen and as such was entitled to receive, including the sum of $600 as judge of the Small Claims Division, the statutory salary of $4,100 a year payable by the county treasurer, on the order of the board of chosen freeholders, in equal half-monthly payments, that the salary for the years 1933 to 1936, inclusive, and for the month of January, 1937, computed on that basis, amounted to $17,141.66, that the amounts ordered by the board to be paid, and which were paid, fell short of that total by $2,575, and that the suit was to recover the last mentioned sum, with interest and costs.

The answer denied that the plaintiff was entitled to receive the sum sued for or any sum beyond the moneys already paid. To the answer was appended, as a part thereof, four separate defenses which may be briefly stated as follows: The first formally asserted that plaintiff had been paid the salary to which he was entitled by law. The second set out at length an agreement, which will be more fully recited *infra*, made by the plaintiff with the board. The third pleaded chapter

17, *Pamph. L.* 1933 expiring by its terms on January 1st, 1934, but given successive extensions to January 31st, 1937; also resolutions by the board, acting under those statutes, fixing plaintiff's salary at the sums actually paid. The fourth asserts that the county treasurer made half-monthly payments in *pro rata* amounts in accordance with the schedule so fixed and that the plaintiff, before receiving each check, signed his name in receipt thereof upon the certified payroll in manner hereinafter set forth and, being given the checks, accepted and cashed them; and that the plaintiff's continuance in office was an assent to the reduction of his salary and his receipt of the checks and his signing of the certified payrolls throughout his whole term of office are an estoppel against now claiming additional compensation.

The proofs submitted by plaintiff on the motion to strike were not in substantial variance with the pleadings. There is before us, also, a stipulation which recites that the payments made as aforesaid were upon the certification of the Civil Service Commission after certification by the plaintiff in the following language:

"I hereby certify that all names in the within payroll are employed solely in the proper duties of the positions and employment indicated, and are justly entitled to the amounts opposite their names. (Signed) LeRoy Vander Burgh, Department Head."

That the department payroll was on every such occasion signed by plaintiff, or his authorized agent, in substantially the following manner:

County Treasurer check No. 59658
Name of employe: LeRoy Vander Burgh
Office classification: Judge
Annual salary: $4,100.00
1933 basis: $3,750.00
Amount due: $156.25
Payee's signature: LeRoy Vander Burgh;

but that each year, in anticipation of the annual budget, the plaintiff sent a requisition to the county in the sum of $4,100 as his anticipated salary.

In addition to the facts as pleaded or stipulated, mention should be made of some pertinent conditions, well within the field of general knowledge, which formed the foundation and the background for the temporary reduction in salaries of public officers and employes. Until the autumn of 1929 the country had enjoyed an era of extensive prosperity. Optimism was high, business boomed, prosperity was widespread and there was a general expectation that the country was on the verge of a participation in world markets beyond anything that had yet occurred. Salaries in private enterprise were marked up and those in public employment likewise. Then came the crash, followed by a measure of recovery and this by a yet deeper and more trying depression. The crisis was acute. Pessimism became more rampant than optimism had been, with the result that all of the banks in the country were closed by presidential act. Business radically drew in its lines, reduced salaries and wages and discharged employes or put them on part time. The reaction on public funds inevitably followed. Taxes were not paid. Public bodies were without money for pressing needs, including payrolls. There was danger of municipal bankruptcy; not merely danger, but in some instances the fact. Resort was had to scrip, that is, to promises, as a temporary substitute for money. Counties were in yet a more tragic position than were municipalities, because a county is not a tax-collecting unit. The question in the mind of everyone who was burdened with, or had an interest in, public responsibilities was, what to do? And with this was an apprehension on the part of public officers and employes whether money would be forthcoming for the payment of their salaries and wages. The admissions in the pleadings, the signed stipulation and the pertinent facts in general knowledge provide a sufficient factual basis for a decision on the issues.

Our own legislature, having already taken some cognizance of the situation, immediately upon convening in January of 1933 addressed itself to the problem and passed a series of pertinent statutes. Chapter 1 of the laws of that year relates to reductions in salary of state officers and employes, chapters

2, 3, 4, 5 and 7 to the relief of the unemployed, chapter 9 to municipal defaults, and so on. Chapter 17, one of the series, is the first of the enactments pleaded in the answer, *supra,* as the authority for the temporary reduction in salary effected by the county of Bergen. The gist of it is to be found in our opinion in *Delmar* v. *Bergen County,* 117 *N. J. L.* 377, and need not be repeated. There was strong public sentiment back of that statute, and of like statutes applying to other branches of the government, and, on the whole, the complementary action thereunder by many of the counties and municipalities of the state was well received and acquiesced in by those whose compensation was cut.

In the instant case we have an example of the co-operative spirit manifested at the time by public officials toward the effort of governmental bodies to make their funds go around by reducing salaries. It is plaintiff's agreement, set up in the second separate defense, *supra,* made early in January, 1933, not with respect to chapter 17, *Pamph. L.* 1933, for this had not yet been enacted, but under an authorizing section of the County act (*Pamph. L.* 1918, *ch.* 185, *art.* 4, § 401), and it reads thus:

"Whereas, by statute it is lawful for the Board of Freeholders of this County to enter into an agreement with any officer or employe to perform the duties of his or her office at a salary less than the amount heretofore fixed, whereupon such officer or employe shall not be entitled to receive or recover from the County any salary greater than that fixed by this agreement; and

"Whereas, due to the prevailing financial condition and stress throughout the country, it is necessary and desirable that deductions be made in the cost of government, and especially that the amount of the budget of the County of Bergen for the year 1933 be reduced; and

"Whereas, it is my desire and purpose to co-operate with those whose responsibility it is to carry on the government of the County and provide funds therefor;

"Now Therefore, I, the undersigned, being an employe and/or official of the County of Bergen,      Department,

do hereby agree to accept a deduction from my salary for the year 1933 of five per cent. (5%), on any sum up to and not exceeding $1,200, and ten per cent. (10%) on any balance over $1,200 up to $5,000, and 15% of any sum above $5,000 hereby waiving the difference between the salary heretofore fixed and sum payable with deductions. Accordingly, I hereby authorize the Treasurer of the County of Bergen to deduct said percentage from my salary, said deductions to be apportioned over the entire year 1933.

(Signed) LeRoy Vander Burgh."

The deductions made under that agreement are a part of the moneys sued for and are included in the judgment under appeal.

Notwithstanding the submission to the board by plaintiff, each year, as a preliminary to the setting up of the budget, of the original statutory figure as the anticipated salary, there is nothing to suggest that after the board had adopted its yearly resolution reducing salaries under the assumed authority of the statute of the respective year, plaintiff voiced any remonstrance or did aught to suggest that he was not in perfect accord with the procedure. Quite otherwise. He, as the head of his department, certified as to each payroll, his name being written there with the others, that all were justly entitled to the amounts opposite their names. If one is to be captious, he may say that the plaintiff did not certify that the nominees were not justly entitled to *more* than the amounts enumerated. But remembering that the paper under discussion was the regular half-monthly payroll and that the plaintiff was under the duty to certify the same so that the employes in his department might receive their just wage, no more, no less, we are of the opinion that the language may fairly be taken to mean that plaintiff was holding forth to the county the correct wage figures and the amounts legally due and owing. This becomes the more apparent when plaintiff, his periodic service being performed and the payment being then in his hands, receipted therefor by signing a statement showing (1) the annual salary as originally fixed by statute, (2) the annual salary as fixed by the board of chosen

freeholders under the accepted statutory authority to reduce and (3) the prorated portion of the latter figure as the "amount due." Either the sums now claimed by the plaintiff became due in these periodic half-monthly installments or they never became due. Plaintiff recognizes this, indeed he builds his case upon it, because his judgment includes a calculation of interest on each installment from the half-monthly period when the admitted portion was paid down to the entry of judgment. The question is whether under all of the circumstances, and with full knowledge on his part concurrent with the circumstances, he may now prevail upon the assertion that whatever he said or did to the contrary was unlawful, thus nullifying his own certifications which ran over a period of years and were relied upon by the county in its financial planning. We think that he may not.

Plaintiff relies chiefly upon our decision in the Delmar case, *supra,* but there are many points of difference. We did not there hold that chapter 17 of *Pamph. L.* 1933 was unconstitutional; we held that the effort of the board of chosen freeholders to apply the provisions of that statute to the plaintiff in that case was not constitutional. The position of a judge of a Judicial District Court has no constitutional attributes corresponding to those of a Common Pleas judge. Judges of Judicial District Courts, by legislative mandate, are appointed by the governor with salaries fixed by the legislature, but it is not argued that these functions could not be placed locally as, *e. g.,* the appointing and fixing the salary of a county traffic magistrate by the board of chosen freeholders (*Rev. Stat.* 1937, 2 :229-1), the fixing of the salary of the county juvenile judge by the board of chosen freeholders (*Rev. Stat.* 1937, 9 :18-5), and notably the power in the board to determine that there shall be a Small Claims Division of a Judicial District Court, an institution that was set up in Bergen county and for which, as judge thereof, the plaintiff claims $600 of the $4,100 annual statutory salary. *Rev. Stat.* 1937, 2 :8-56. The inherent character and jurisdiction of the two courts are quite different; and in this we have in mind, not merely the limits placed upon the value and type of litigation cog-

nizable by Judicial District Courts, but also what may be termed their lack of geographical universality. The existence of a District Court is the outcome of a special act of the legislature creating it in response to the needs of the community. There are places which have no such court. Not so with the Common Pleas Courts which, in their totality, cover the entire state. Further, there are striking dissimilarities in the physical aspects of the instant case as contrasted with the Delmar case. Judge Delmar agreed to accept, for a limited period, as did the plaintiff herein, a sum less than the original statutory classification, but he did not sue to recover the difference. In addition, he did not accept the reduced payments during the period for which he sought to recover, except for a portion covered by a saving stipulation. No question of estoppel or waiver was there raised or considered. The Delmar decision does not, we think, bear upon our disposition of the present litigation.

Plaintiff was clearly wrong, we find, in claiming for the period covered by his agreement. He argues that it is against public policy to permit a public officer to accept less compensation than that fixed by law; and the reliance is upon *Geddis* v. *Westside National Bank*, 7 *N. J. Mis. R.* 245; *affirmed,* 106 *N. J. L.* 238, and *Kip* v. *Peoples Bank and Trust Co.,* 110 *Id.* 178. Those cases turned upon an agreement between a notary public and a private employer. The question of waiver after the fee was earned was expressly reserved in the Kip case and in the later case of *Weart* v. *First National Bank of Dunellen,* 115 *Id.* 128, was answered to the effect that under appropriate circumstances a notary, after earning a fee, could lawfully waive it. What is public policy as between a public officer and an individual, or between a public officer and a branch or an agency of the government in normal times, does not as of course control the question of the salary or wage of a person in the public employ, payable from public funds, in a time of grave financial peril when the whole economic structure is trembling. Far from being against public policy, we think that, the constitution and the statutes permitting, the participation of those on the public payroll in

the reductions submitted to by employes generally was an eminently patriotic, fitting and serviceable act. Moreover, the courts may not say that which the legislature authorizes is void upon the ground that it is contrary to public policy. Section 401, article 4 chapter 185, *Pamph. L.* 1918 (the County act) gives, by its terms, specific authority for the contract made between the parties for the 1933 salary. Also, whatever may or may not be said against the constitutionality of the 1933 statute, the legislature, by that statute, made clear that such acts as those now under review were not against public policy.

The 1933 claim is out for two reasons: First, the plaintiff agreed, under statutory authority, to receive a less salary, and that salary was paid to and received by him in accordance with the agreement. There was an estoppel. Second, after plaintiff had earned each recurring installment, he took such a position with respect to it that he should be held to have waived any further compensation for the completed period.

The remainder of the salary payments, being from January 1st, 1934, to December 31st, 1936 (the judgment and the schedule on which the judgment is based seem to disregard the claim for the month of January, 1937), are not within the terms of the agreement. They resulted from board action under the 1933 and subsequent statutes purporting to give the board power to reduce salaries.

It is not possible to measure nicely the effect upon others—the board of chosen freeholders in its efforts to weather the financial storm, the legislative movements of the assembly and the senate, the course of other persons employed in the public service—of plaintiff's acts and omissions in the premises; but it is certain that what plaintiff did and what he refrained from doing were part and parcel of a unified effort by society to avert the financial crash of its public institutions. We are of the opinion that the essentials of an estoppel were present and that plaintiff's acts and omissions should estop him from now asserting the claims sued upon; and, further, that at regularly recurring periods, after he had rendered his service and was receiving his pay, he effectively waived, in

the interest of the public weal, the collection of further compensation, inclusive of that sued upon.

We conclude that the issue presents a court question and that the plaintiff is barred by estoppel and waiver from asserting his claim. Even if it be, as he contends, that the statutes relied upon were unconstitutional, he entered absolutely and unreservedly into co-operative sacrifice for the common good in a time of great public danger and widespread anxiety. It was a patriotic thing for him to do; also, it was an act of enlightened self-interest. No one knows what financial confusion might have come had those emergency moves not received general participation. He may not now renounce.

The judgment will be reversed.

BROGAN, CHIEF JUSTICE. (Dissenting.) The plaintiff, a judge of the District Court of the First Judicial District for the county of Bergen, sues for an amount representing the reduction made in his salary by the board of freeholders for the years 1933 to January, 1937. The legislature established the salary at $4,100 a year.

It appears that early in the month of January, 1933, plaintiff signed a consent to a reduction of the statutory salary, authorizing the fiscal authority of the county of Bergen to make the deduction in question. By its terms, however, this consent or authorization was limited to that year and was neither renewed nor extended to subsequent years. The consent is, in substance, an unequivocal waiver of the difference in salary as fixed by the legislature and the salary as reduced by the governing body in the county. There can therefore be no recognition, legally, of this part of the plaintiff's claim.

As to the remainder of the claim, however, the situation is quite different, factually and legally. For the balance of the term in question, the plaintiff accepted a reduced salary apparently without objection. I am unable to agree that the acceptance of an amount less than the salary fixed by the legislature raises an estoppel against the plaintiff so that as a matter of law he may be held to have waived the difference. Whether a waiver came into being was a fact question under

the circumstances of this case and should have been submitted to a jury for determination. The acceptance of a lesser amount than the salary fixed by law does not, without more, create a waiver, estoppel or an accord and satisfaction, as a matter of law. *Kehn* v. *State of New York,* 93 *N. Y.* 291; *Clark* v. *Clark,* 142 *N. Y.* 101; *Grant* v. *Rochester,* 79 *A. D.* 460; *affirmed,* 175 *N. Y.* 431; *Pitt* v. *Board of Education,* 216 *Id.* 304. This likewise is the rule of the Federal Supreme Court: *Glavey* v. *United States,* 182 *U. S.* 595; *United States* v. *Andrews,* 240 *Id.* 90, 93.

The defendant, claiming a waiver in its separate defense, had the burden of proving it. There is no proof whatever to support the pleading except a stipulated exhibit or receipt which sets forth the annual statutory salary, the reduced salary basis, the amount due (a semi-monthly installment) and the signature of the plaintiff, payee.

The facts in this case do not come within the principal laid down in *Love* v. *Jersey City,* 40 *N. J. L.* 456; but compare *Muhlenbeck* v. *West Hoboken,* 99 *Id.* 198, 199, where it was held by this court to be a question of fact as to whether submitting bills for salary for a lesser amount than the sum fixed by ordinance amounted to a waiver. Waiver depends upon the intention of the party against whom it is charged. It must be an unequivocal, intentional relinquishment of a known right, and it must be proved. If the waiver be proved by an express, incontrovertible declaration which admits of but one conclusion (as in this case, for the reduction in salary for 1933) then the question of waiver is one of law; but when the defense of waiver, as here, rests solely upon the receipt of a lesser sum than the statutory salary for 1934-1936, and is unsupported by any proof that the act of receiving the lesser sum was the voluntary, intentional donation or relinquishment of part of his salary by the plaintiff, the issue as to whether this amounts to waiver is a fact question.

Mr. Justice Perskie, Judges Dear, WolfsKeil, Rafferty and Walker, are in accord with the view here expressed, which would result in a reversal and the award of a *venire de novo.*

*For affirmance*—None.

*For reversal* (*on the opinion of Justice Case*)—THE CHANCELLOR, PARKER, CASE, BODINE, DONGES, HEHER, HETFIELD, WELLS, JJ. 8.

*For reversal* (*on the opinion of Brogan, Chief Justice*)—THE CHIEF JUSTICE, PERSKIE, DEAR, WOLFSKEIL, RAFFERTY, WALKER, JJ. 6.