WALTER K. CRATER, PLAINTIFF, v. COUNTY OF SOMERSET, DEFENDANT.

THOMAS C. VAIL, PLAINTIFF, v. COUNTY OF SOMERSET, DEFENDANT.

WILLIAM R. SUTPHEN, PLAINTIFF, v. COUNTY OF SOMERSET, DEFENDANT.

Decided February 9, 1939.

For the plaintiffs, *T. Girard Wharton.*

For the defendant, *Grover S. Kipsey* (*Tamblyn & Fairlie,* of counsel).

SMITH, JOSEPH L., S. C. C. This comes on a motion to strike the answers and various defenses filed in each of the above cases, upon the ground that they are in part sham, in part insufficient in law, and in part frivolous, impertinent and scandalous. All three cases involve the same principles and will be discussed jointly.

The plaintiffs, Messrs. Crater, Sutphen and Vail, are clerk, surrogate and sheriff, respectively, of the county of Somerset,

having been elected to their offices on November 2d, 1937, and having qualified for office on November of that year. They sue for balances of salaries allegedly due them for the period from May 16th to June 30th, 1938, inclusive.

The contention of the plaintiffs is, that the annual salary of each of the respective offices in counties with a population of between sixty-two thousand and eighty-two thousand is set, by the statutes applicable, at $6,000. (See *R. S.* 40:41-6 for sheriff; 40:38-5 for county clerk, and 2:7-19 for surrogate) ; that the classification is to be determined by the latest census, and that, according to the census of 1930, Somerset county had a population of over sixty-five thousand; that, therefore, they, as sheriff, county clerk and surrogate of Somerset county, are each entitled to said annual salary of $6,000.

The answers and the various separate defenses pleaded by the defendant may be summarized under four headings, thus : (a) that under the statutes applicable, the plaintiffs were entitled to annual salaries of $3,500 each, which they received. Arguments of counsel disclose the statute relied upon to be *R. S.* 40:11-17, which, in substance, provides that the federal census of 1930 and the act reclassifying counties shall not operate to increase or decrease the salaries of county officers, and such officers are to continue to receive salaries at the rate received by them on April 27th, 1931. (b) Estoppel, by reason of certain acts and circumstances subsequently discussed, and (c) that it would be unlawful for the defendant to pay the salaries claimed; (d) a general denial.

The material facts in the case being agreed upon, except as hereinafter indicated, the legal validity of the defenses, as indicated under the headings a, b and c only, require consideration. These will be disposed of in the order mentioned.

(a) The defendant contends that under the statutes applicable, plaintiffs are each entitled to annual salaries of $3,500. As all three suits involve the same principles, it will be sufficient to allude to one only: for instance, the case of the sheriff.

*R. S.* 1937, 40:41-6 provides a scale of salaries to be received by the sheriffs of the various counties, classified

according to population; the salary of sheriffs in counties with a population of sixty-two thousand to eighty-two thousand, being set at $6,000, and in counties with a population of less than forty-eight thousand, except certain counties bordering on the Atlantic ocean, at $3,500.

40:41-7 provides:

"Except as otherwise provided by section 40:11-17 of this title, the salaries provided for by section 40:41-6 of this title shall be determined and paid upon a basis of population shown by the latest census, without regard to the date of election or appointment of the sheriff, and shall be paid by the proper county disbursing officer in equal semi-monthly payments."

40:11-17 provides:

"The promulgation or taking effect of the federal census for the year one thousand nine hundred and thirty, or the passage of an act for the reclassification of counties of this state, shall not operate to increase or decrease the salary or compensation of any officer or employe of any county or municipality. All such officers and employes shall continue to receive salary or compensation at the rate received by them on April twenty-seventh, one thousand nine hundred and thirty-one."

The act reclassifying the counties referred to in 40:11-17 is chapter 245 of the laws of 1931, which is now *R. S.* 40:17-1, &c. The revisers' note to 40:17-1 recites:

"In this revision all laws enacted prior to such reclassification act of 1931 and dealing with counties by classes have been rewritten so that they now relate, in terms, to the classes of counties to which they were made applicable by section three of said reclassification act."

It appears then, that the classification of counties under 40:41-6, setting forth sheriff's salaries, will apply, unless 40:11-17 is effective, in which event the plaintiff will be entitled to an annual salary of $3,500, because prior to 1930, Somerset county had a population of less than forty-eight thousand.

The plaintiff's first contention is that 40:11-17 does not apply to him, in that he is a state officer and not a county

officer. No doubt there is some merit to this contention, and unquestionably in many respects, and for many purposes, the sheriff, county clerk and surrogate may well be considered state officers. In fact, particularly with the case of the sheriff, we have the opinion of the late Judge Lawrence, in the case of *Doyle* v. *County of Warren,* 15 *N. J. Mis. R.* 434; 192 *Atl. Rep.* 390, wherein he said (at *p.* 436):

"It is sufficiently clear that a sheriff, although chosen by the voters to serve in a county, is a public officer in the state government. The duties he performs include services rendered not alone to the inhabitants of the county, but to the people of the state as well."

Judge Lawrence, however, recognized that sheriffs are officers whose salaries are provided for by general laws, on the rational basis of the population of the counties wherein they serve.

We cannot escape the evident purpose of the 1931 act, 40:11-17; that is: to prevent the results of the 1930 census from increasing the salaries of officers whose compensations are based upon the population of the counties. To apply the interpretation given by the plaintiffs to 40:11-17, would seem that as to so-called state officers, whose salaries are based upon the rational basis of the population of the county wherein they serve, the results of the 1930 census are operative, and as to other officers, whose salaries are likewise based on the population of the county wherein they serve, the results of the census are inoperative. Such an interpretation would result in an illogical and unreasonable distinction.

It is perhaps sufficient to note that the revisers put "county clerks" and "sheriffs" under "elective county officers" (40:38-1, *et seq.* and 40:41-1, *et seq.*), and, immediately under "elective county officers," they added the note:

"Surrogates, see Chap. 7 (2:7-1 *et seq.*) of the title Administration of Civil and Criminal Justice."

It is evident, then, that the legislature, in adopting the Revised Statutes, considered surrogates, county clerks and sheriffs as county officers; and, whatever may be the nature of their offices in other respects, they are county officers within the meaning of 40:11-17.

The next contention of the plaintiffs is that 40 :11-17 is unconstitutional in that it destroys the only existing and rational basis upon which the salaries of the respective officers may be founded, violating article IV, section VII, paragraph 11 of the New Jersey Constitution, forbidding the enactment of special or local laws regulating the internal affairs of counties.

Unquestionably, *R. S.* 40 :11-17 is an act regulating the internal affairs of counties, namely, the salaries of county officers. *Freeholders of Passaic* v. *Stevenson,* 46 *N. J. L.* 173; *Delmar* v. *Bergen County,* 117 *Id.* 377; 189 *Atl. Rep.* 75. The defendant, conceding that under our constitution only general laws regulating the internal affairs of the counties may be enacted, and that there must be a reasonable relationship between the classification and the object of the legislation, goes on to say, that "the basis for classification in the 1931 act (40 :11-17) is not population. The basis of the 1931 statute is a freezing, a pegging of the wage, and a preservation of the *status quo."* Counsel for the defendant confuses the purpose and motive of the enactment with the method by which it may be lawfully carried out. The constitutional provision requires that legislation by which this economy and freezing and pegging of wages is to be obtained, must be a general one, with a reasonable relationship between the basis of the classification and the object of the legislation. The defendant further asserts that the law is a general one, creating no preferences and establishing no inequalities. This is not so. The statute under consideration, by operation, would lead to this result: the sheriff (or other officer as the case may be) of a county which, according to the 1930 census had a population of between sixty-two thousand and eighty-two thousand, but which, according to the 1920 census had a population of less than forty-eight thousand, shall receive $3,500, but the sheriff of a county which, as of the 1930 census is similarly situated, but which, according to the 1920 census had a population of sixty-two thousand, shall receive $6,000. Obviously there is a discrimination. The only question is, is there a reasonable and logical basis for the discrimination? None is offered and none is perceived by the court; in effect,

the statute places the fixing of salaries not upon the population served, or other factors affecting the service, but upon a historical basis, a basis not relevant or germane to the duties of the officer whose salary is affected.

Thus, in *Long Branch* v. *Sloane,* 49 *N. J. L.* 356 (at *p.* 363); 8 *Atl. Rep.* 101, Mr. Justice Magie states:

"* * * if the characteristics used to distinguish the objects to which the legislation applies from others are not germane to the legislative purpose, or' do not indicate some reasonable appropriateness in its application, or if objects with similar characteristics and like relation to the legislative purpose have been excluded from the operation of the law, then the classification would be incomplete and faulty, and the legislation not general, but local or special."

That a historical past, not germane to the object of the legislation, cannot be the basis of classification, was the opinion of Mr. Justice Dixon in *Stahl* v. *Trenton,* 54 *N. J. L.* 444; 24 *Atl. Rep.* 478. In that case, the legislature provided that in cities in which a newspaper in German language, shall have been printed for three years or more, such newspaper shall be designated as an official newspaper of the city. Holding the classification unreasonable, Mr. Justice Dixon said (at *p.* 445):

"The fact of the publication of a German newspaper for three years before April 11th, 1889, is made the sole basis for the classification of cities, in order to determine whether they shall be required to publish their municipal proceedings in a German newspaper. The characteristic thus made the basis of the legislative classification of cities, is one to which the purpose of the law relates; but, in my judgment, it is not one of sufficient importance to warrant the classification. To have such efficacy, the characteristic must, in some reasonable degree, justify the peculiar legislation attempted, and render it appropriate to the municipalities affected, while it would be inappropriate to others.

\* \* \* \* \* \* \*

"Legitimate classification rests on the qualities of objects; not on the particular time when those qualities are acquired."

But for 40:11-17, admittedly, the basis of classification of

the various counties for the fixing of the salaries of its officers, is population as ascertained by methods provided by law. *R. S.* 40:11-17 disregards such classification, substituting for it an ancient count, admittedly no longer true; it destroys the existing lawful basis of classification, substituting for it no logical or reasonable basis, characterizing the service rendered. Existing population becomes a reasonable and logical basis for classification, because upon the size of existing population depends the extent of the service rendered; but when we drop that criterion and adopt an obsolete census, the logical relation between population and salary is lost.

In *Albright* v. *Sussex Co.,* 68 *N. J. L.* 523 (at *p.* 532); 53 *Atl. Rep.* 612, it is said:

"Inasmuch as most, if not all, of our towns and cities normally increase in population from year to year, it is constantly to be held in view in classifying municipalities with respect to population, that in order to insure uniformity, provision must be made for those that shall hereafter attain the requisite number of inhabitants, as well as for those already possessing it."

And, in *Dickinson* v. *Freeholders of Hudson,* 71 *N. J. L.* 589 (at *p.* 592); 60 *Atl. Rep.* 220, the court says:

"Where population is made the basis of classification for legislative purposes, a law based thereon, which excludes from its operation any county shown to be within the class, by any legally ascertained enumeration of the people, is special."

And, again (at *p.* 593):

"If the legislature may provide a classification excluding an enumeration of the people, required by the laws of our own state, why may it not, with equal propriety, say that the population fixed by a statute, as a basis of classification, shall only be operative in the counties within the act, as such population may be ascertained by every *second* national census * * *.

"Each county has the right to come within the class after it has been shown by any legal enumeration of the people to contain the required population * * *.

"An act which excludes counties shown to have the population required by it, by a census taken under our state law, is a special act and void."

It appears clear, then, that salaries of counties being fixed on the basis of population, the act disregarding a lawfully taken census becomes a special act in violation of the constitution.

Nor can the act be sustained as an emergency legislation. The act does not recite that it is an emergency legislation; or that it is temporary, effective only during a limited period, or during any financial or economic crisis.

Even as an emergency act, the legislation would be defective if not general. As stated in *Delmar* v. *Bergen County,* 117 *N. J. L.* 377 (at *p.* 388) ; 189 *Atl. Rep.* 75:

"A statute which creates inequalities in the salaries of county prosecutors without regard to population, service rendered, or other general rule has been held not to be a general law. *Woodruff* v. *Freeholders of Passaic,* 42 *N. J. L.* 533. A law which does not operate equally on all of the class to which it relates, but creates preferences and· establishes inequalities, is not a general law. *Van Riper* v. *Parsons,* 40 *Id.* 1."

It is next contended by the defendant that the plaintiffs are estopped from asserting the claim in that: (1) the plaintiffs became candidates for the offices in question with full knowledge of the salary then being paid; (2) it made its budget without knowledge of plaintiffs' intent to seek the salary in question, and (3) that the plaintiffs submitted a budget for the year 1938, wherein they included a salary of $3,500, for themselves. It will be borne in mind, that no waiver is alleged. The plaintiffs seek nothing for the period preceding their protest; they seek balance of salaries during the period when they accepted the salaries given to them under protest. It will be noted that *R. S.* 40:41-7 provides that the classification shall be applicable "without regard to the date of the election or appointment of the sheriff," similar provisions being made for the other two officers in question.

Defendant's contention that the plaintiffs are "estopped," is mere conclusion, giving no factual basis. Counsel for the defendant does not indicate in what manner the county changed its position upon the representation or by reason of the conduct of the plaintiffs. The sum and substance of

defendant's contention is that, relying upon plaintiffs' acceptance of less than their lawful salary before a certain date, they were paid less after that date, over plaintiffs' protest. The defendant alleges or avers no fact showing that it has sustained any detriment or loss by reason of any act, conduct or representation of the plaintiffs. That part of the salary which the plaintiffs, under the application of the decision in *Vander Burgh* v. *County of Bergen,* 120 *N. J. L.* 444; 200 *Atl. Rep.* 561, may be held to have waived, or to be estopped from asserting, they do not seek to recover. Their claim is confined to the balance of salary earned during the period when they accepted payments under protest.

Similar to the position of the plaintiff in *Smith* v. *National Commercial Title, &c., Co.,* 120 *N. J. L.* 75; 198 *Atl. Rep.* 407, the acceptance by the plaintiff of the remittance under protest, had no misleading affect upon the defendant's subsequent course.

In the *Vander Burgh* case, *supra,* the court specifically confined the doctrines of estoppel and waiver to salaries or fees earned.

Nor does the defendant allege any valid agreement, mutually arrived at and agreed upon, made and entered into between the plaintiffs and the defendant, to accept the lesser salary. As stated in *Galpin* v. *City of Chicago,* 269 *Ill.* 27; 109 *N. E. Rep.* 713:

"It is a novel idea in the law of estoppel that the doctrine should be applied to a person who has been guilty of no fraud, simply because, under a misapprehension of the law, he has treated as legal and valid an act void and open to the inspection of all. As we understand the doctrine of estoppel *in pais,* it is based upon a fraudulent purpose and fraudulent result. Before it can be invoked to the aid of a litigant, it must appear that the person against whom it is invoked has, by his words or conduct, caused him to believe in the existence of a certain state of things and induced him to act upon that belief. If both parties are equally cognizant of the facts, and one has acted under a mistaken idea of the law, the other party cannot say he has been deceived thereby, and is entitled to the application of the rules, but will be considered as having acted upon his own judgment solely."

These separate defenses, therefore, set forth no facts constituting estoppel or waiver.

As to the fifth and seventh separate defenses, these set forth that if defendant were compelled to pay, it would be exceeding its budgets and appropriation; that the days of prosperity are over and that wages and salaries in private enterprise have been reduced, and that the defendant considers it its duty to reduce public expenses, and that it is plaintiffs' duty to co-operate, evidently by foregoing their salary. If the plaintiffs are legally entitled to their salaries, they are under no more duty to co-operate with the defendant in the reduction of public expenditures than it is the duty of merchants to accept less than they are entitled to for merchandise which they have furnished the county.

If, as stated above, the statute in question: 40:11-17, is unconstitutional, it was defendant's duty to make provisions accordingly, and payment of a salary which the law requires that the county make, cannot constitute a wrong. The fifth and seventh separate defenses, therefore, set forth no defense. It follows then, that the answer and the first separate defense, merely alleging non-liability and fulfillment of liability, are sham.

For the reasons stated, the answer and the various defenses, will be stricken as in part sham and in part insufficient in law, and an order will be entered accordingly.